UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN F. REUTEMANN, Jr.
8811 Victory Lane
Potomac, Maryland 20854

and

MALCOLM ROAD ASSOCIATES
LIMITED PARTNERSHIP
6216 Mazwood Road
Rockville, Maryland 20852,

Plaintiffs,

v.

AFFIRMX, LLC
Attn: Stephen D. Graeff, Resident Agent
3910 Rosemary Street
Chevy Chase, Maryland 20815,

and

KENNETH F. WOLFF
9910 Willow Tree Lane
Rockville, Maryland 20850,

Defendants.

CASE NO.

BENCH TRIAL
NO JURY DEMANDED

## COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS

I.   INTRODUCTION

1.   Plaintiffs John F. Reutemann Jr. ("Reutemann") and Malcolm Road Associates Limited Partnership ("MRALP"), were deceived and defrauded in connection with an investment scheme by Defendant Kenneth F. Wolff ("Wolff"), and his firm, AffirmX, LLC ("AffirmX"). Wolff and his firm profited handsomely; Reutemann and MRALP, after waiting years, were denied the equity interests in AffirmX promised by Defendants.

2. In mid-2014, Wolff solicited first Reutemann, a man he had cultivated as a personal friend for years, and then a second friend, Greg Friedman, principal of Malcolm Road Associates Limited Partnership, to each invest $100,000 into AffirmX, a then struggling company. The inducement offered by Wolff was repayment with 8% interest in accordance with the terms of a three-year security issued by the firm convertible at the option of the Noteholders into a significant equity stake in AffirmX in the event of a major capital transaction.

3. In order to aid his friend in dire need, Reutemann wrote two (2) checks to AffirmX on July 31, 2014, comprising his investment of $100,000. He received a note with a three-year term – a security issued by AffirmX -- bearing the same date. The note, prepared by Wolff's attorney and accepted without change by Reutemann, required repayment on its three-year anniversary date in 2017. It provided the right to convert the loan to an equity stake in the company if there was a major financing or sale of the business prior to satisfaction of the promissory note. Following a meeting on the weekend of August 30, 2014 with Wolff at Mr. Friedman's home, Friedman agreed that MRALP also would invest $100,000 in AffirmX on essentially the same terms. Reutemann and MRALP are sometime collectively referred to herein as the "Noteholders".

4. Repayment was not made on the respective maturity dates stated in the loan documents executed by Wolff and AffirmX, thereby extending the respective conversion dates. While small interest payments were made and some principal was paid to MRALP, neither Reutemann nor MRALP was repaid their respective investment until 2019. Neither was advised when AffirmX made a profitable capital transaction, nor was either given the equity interest in AffirmX, nor offered the opportunity to convert the loans as provided in the AffirmX documents. Neither was told that AffirmX had been building a valuable cloud-based compliance business for credit unions protected by U.S. and international agreements. Neither Plaintiff was told anything

by Wolff, who had inexplicably dropped Reutemann as a friend, nor by AffirmX regarding the reason for the firm's default and disregard of its agreements with and obligations to Plaintiffs.

5. In 2019, Defendants' motivation to disregard and breach the agreements with, and representations to the Plaintiffs became clear. AffirmX closed a major transaction with a group of credit unions. Reutemann and MRALP were suddenly issued checks for the principal amount of their investments and accrued interest – and nothing more. No explanation was offered for the long overdue repayment. No disclosure regarding the transaction that brought AffirmX and its equity owners millions of dollars was made. Notwithstanding the express language of the convertible promissory notes Wolff had executed on behalf of AffirmX, no conversion opportunity or equity stake was offered to either Defendant, each of whom had risked $100,000 to save their friend's then struggling firm. No notice of the transaction was given as required. AffirmX and Wolff profited at the expense of Reutemann and MRALP who had taken a large financial risk to save the once struggling business.

6. Later Defendants refused a request by Reutemann and Friedman to meet and discuss the transaction, claiming there was "nothing" to discuss (July 29, 2019 Roy Morris email to Thomas Gorman, Esquire, who then was acting as attorney for Reutemann and MRALP).

7. Defendants' actions violated Section 10(b) and Rule 10b-5 thereunder of the Securities Exchange Act of 1934, the fraud provisions of the Maryland securities statute and breached their respective fiduciary duties to Plaintiffs.

## II. JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

10. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C § 78aa) and 28 U.S.C. § 1391(b) as the omissions entered into and the subsequent damages took place within this district.

11. In connection with the acts, conduct, and other wrongs alleged herein, Defendants, either directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of a national security exchange.

### III. PARTIES

12. John F. Reutemann, Jr., Plaintiff, is the owner of Research Financial Strategies, a successful investment firm based in Rockville, Maryland. The firm is an SEC registered broker-dealer and investment adviser. Reutemann has known Defendant Kenneth Wolff for many years and considered him to be among his closest personal friends.

13. Greg S. Friedman is a Rockville, Maryland real estate attorney. Greg is a long time, close personal friend of Plaintiff John Reutemann, and also was a friend of Defendant Wolff. Mr. Friedman is part owner and the sole control person of Malcolm Road Associates Limited Partnership, a Maryland limited partnership which owns a parcel of income producing commercial real property in Prince George's County, Maryland.

14. Defendant AffirmX, LLC is a Delaware limited liability firm with its principal offices at 5301 Buckeystown Pike, Suite 420, Frederick MD 21704. The firm established a registered office in Wilmington, Delaware in 2014, as well as offices in Maryland and Virginia. It specializes in cloud based compliance solutions for credit unions and others. The firm holds U.S. and international copyrights.

15. Defendant Kenneth F. Wolff is a successful Maryland businessman. He resides in Rockville Maryland. He is principal of Achievence LLC ("Achievence"), a management consulting firm, as well as founder and controlling member of AffirmX at all times pertinent hereto. Wolff represents himself as Chief Executive Officer of AffirmX. See Wolff business card attached as Exhibit 1.

### IV.  FACTS

#### A.  Wolff uses his friendship with Reutemann to prop up AffirmX

16. By 2014, Wolff had embraced Plaintiff Reutemann as a close personal friend. He also had solicited Reutemann to become a client of Achievence. Research Financial Strategies, Mr. Reutemann's firm, has paid substantial consulting fees to Achievence. The two men spoke on the telephone almost daily, discussing matters ranging from business to personal family concerns. They also frequently socialized. Their families got together for periodic social events. The relationship was one of trust and confidence. Wolff failed to disclose to Reutemann that the State of Maryland had forfeited the corporate charter of Achievence in 2011.

17. In July 2014, Wolff approached Reutemann with a personal business issue. At the time Wolff had created and controlled AffirmX. The firm was a start-up, focused on compliance for credit unions and others. Wolff reminded Reutemann of their close personal relationship with Reutemann and implored him to loan $100,000 to AffirmX. Wolff assured his close friend that the money would be repaid within 90 days. The proposal was essentially for a "bridge" loan to aid the start-up until a pending business deal closed, according to Wolff.

18. Reutemann agreed to make the requested investment in reliance upon his personal friendship with Wolff. He gave Wolff two personal checks, each in the amount of $50,000, respectively dated July 31, and August 1, 2014. Exhibit 2.

19. Wolff had his attorney Roy Morris prepare the documentation acknowledging Reutemann's $100,000 investment in AffirmX. AffirmX issued a *Convertible* Note (emphasis added) prepared by Morris which specified a maturity date of "July ___, 2017". Exhibit 3. Reutemann presumes that Messrs. Wolff and Morris inadvertently omitted the day in the maturity date; however, as Wolff repeatedly had stated that this would be a 60-90 day loan and in no event would it be outstanding beyond three years, Reutemann has assumed a maturity date of July 31, 2017. Interest would be paid on the principal sum of $100,000 at 8% *per annum*. If there was a major financing before satisfaction of the debt, Reutemann would be entitled to convert the principal amount into "Membership Units in the Maker," i.e., AffirmX.

20. Reutemann accepted the papers including the note without suggesting a change. In doing so, he neglected to fill in the date in July 2017 on which the three-year security would mature. Wolff portrayed the transaction as an opportunity for a significant capital gain in consideration for taking the risk to help out a close personal friend.

21. Wolff asked Reutemann if he could suggest others who might be interested in a similar investment. Reutemann suggested another mutual close personal friend, Greg Friedman.

22. On or about August 31, 2014, Reutemann accompanied Wolff to the home of Greg Friedman. During the meeting at Friedman's home, Wolff reiterated the investment proposition he previously had offered to Reutemann. He painted a rosy picture of the future of AffirmX but stated that without the loan AffirmX would be unable to satisfy its upcoming payroll obligations to its employees.

23. In reliance on Wolff's representations of prompt repayment, Friedman agreed to make the investment. Friedman wrote a check to AffirmX, drawn on the account of MRALP, dated September 3, 2014, for $100,000. Exhibit 4. Wolff presented a Convertible Promissory

Note of AffirmX, which contained essentially the same terms as the papers he had provided to Reutemann. Mr. Friedman required minor revisions to the document prepared by Wolff's attorney, which thereupon was executed by Mr. Wolff personally and as President of AffirmX. Wolff also executed a personal guaranty of the MRALP loan. Exhibit 5.

**B.     AffirmX and Wolff build a risk assessment and compliance business**

24.     Subsequently, AffirmX's business moved forward.  The next year, in September 2015, AffirmX announced that it had been granted a trademark from the U.S Patent and Trademark Office ("PTO").  The trademark was for "Conducting internal business audits in the fields of risk management and regulatory compliance, for businesses that are subject to the disclosure and reporting requirements such as those in the Dodd-Frank Wall Street Reform and Consumer Protection Act, The Consumer Financial Protection Bureau, and additional governmental consumer protection compliance requirements."  In fact, this was in addition to Patent 8543444 which PTO had granted to Wolff, Neighborbench LLC, *et.al.* on September 24, 2013, for "METHOD AND SYSTEM FOR ASSESSING COMPLIANCE RISK FOR REGULATED INSTITUTIONS".  Upon information and belief, such patent subsequently was assigned to AffirmX, although the patent and assignment were not disclosed to Reutemann or Friedman until Wolff provided a professionally bound Private Placement Memorandum to Friedman in 2016 or 2017 in order to induce Reutemann and Friedman not to call the AffirmX loan on maturity. The cover page of the Memorandum states "Presented by Ken Wolff, President & CEO, AffirmX".

25.     In the wake of the 2008 market crisis, and the passage of the Dodd-Frank Wall Street Reform Act in 2010, compliance had become a key topic.  Federal banking regulators, the Consumer Financial Protection Bureau ("CFPB"), the Financial Crimes Network ("FinCEN") and others focused on compliance.

26. The U.S. Trademark secured by AffirmX was preceded by a similar one granted in Geneva, Switzerland just months after AffirmX had issued its securities to Reutemann and MRALP. In December 2014, its application was granted for a trademark described in the abstract posted by the World Intellectual Property Organization as a "method for distributing requests for artifacts to a regulated institution for risk assessment . . ." Stated differently, the application related to risk management and compliance. The application had been made by Wolff and others for AffirmX.

27. In April 2015, AffirmX secured a similar trademark in the U.K. As with the Swiss trademark, this one was centered on risk management and regulatory compliance. In September 2015, Lahore, Pakistan granted a similar application.

28. In October 2015, the firm announced "AffirmX Lite." The program was designed to offer an "entry level version of its [AffirmX's] patented compliance solution platform available to credit unions on an asset-sized pricing basis. For some small institutions who are members [of the National Credit Union] . . . the solution . . . will be free."

C. **AffirmX and Wolff breach their obligations**

29. As the term of the convertible promissory notes approached maturity the close personal relationship between Reutemann and Wolff suddenly changed. Without explanation, Wolff dropped Reutemann as a friend. Wolff continued to speak to Friedman promising in each conversation that a capital transaction was being negotiated.

30. At the conclusion of the three-year note terms in mid-2017, AffirmX and Wolff breached their obligations under the notes owed to each Plaintiff. Repayment was not made. No opportunity was offered to exercise the Noteholders' right to convert to equity in AffirmX. The sole explanation provided by either AffirmX or Wolff for breaching their obligations under the securities was that the promised capital transaction had yet to be consummated.

### D. AffirmX and Wolff again breach their obligations to Plaintiffs

31. In March 2019, a group of credit unions announced what was effectively a major financing with AffirmX under which the group would jointly acquire the "patented risk management and technology . . .[of the firm]." The group included The Mountain West Credit Union Association (Colorado, Arizona, Wyoming), Maryland & DC Credit Union Association, Indiana Credit Union League, Credit Union League of Connecticut, Cornerstone Credit Union League, League Service Organization, majority owned by the Michigan Credit Union League and several others. This was initially announced on March 6, 2019.

32. Suddenly, and without explanation, the investment made by each Plaintiff in the delinquent 2014 AffirmX notes were repaid. In making those payments, AffirmX and Wolff ignored and ultimately breached again their duties and obligations of good faith, honesty and fair dealing to the Noteholders (and potential equity holders), Reutemann and MRALP. Neither AffirmX nor Wolff disclosed any information to Reutemann or Friedman in accord with their obligations as controlling shareholders of the firm to the two prospective equity holders. Neither AffirmX or Wolff provided Plaintiffs with evidence reflecting the equity interests in the firm that were promised. AffirmX and Wolff each breached their obligations as control persons in AffirmX to the stakeholders Reutemann and MRALP.

34. Shortly after repaying the principal amounts, Wolff visited Mr. and Mrs. Reutemann at their home on the evening of June 4, 2019. They sat together on the Reutemanns' patio from 9:00 p.m. to 1:00 a.m., during which time Wolff boasted to Mr. and Mrs. Reutemann that the capital transaction had generated $5,000,000 for AffirmX. Wolff stated that the remaining AffirmX business was now worth "an additional ten to fifteen million dollars". Upon becoming aware of the size of the transaction and greatly increased value of AffirmX, Reutemann and Friedman consulted an attorney who proceeded to contact Roy Morris, counsel for Wolff and

AffirmX, and requested a meeting to discuss Plaintiffs' right to convert to equity. Morris responded by email on June 19, 2019, stating "…There is nothing to discuss." Friedman telephoned Wolff who similarly denied any obligation on the part of AffirmX and refused to discuss the matter. Wolff stated, "This will be the end of our friendship."

## CLAIMS FOR RELIEF

### Count 1: Violation of Exchange Act Section 10(b) and Rule 10b-5(b) Promulgated Thereunder

35. Plaintiffs reallege and incorporate by referenced herein each and every allegation contained in paragraphs 1 through 34.

36. AffirmX and Wolff each breached their obligations to Reutemann and MRALP, directly and indirectly, singly and in concert, in connection with the purchase or sale of securities, employed devices, schemes and artifices to defraud, and engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon investors in violation of Exchange Act Section 10(b) and Rule 10(b) – 5 thereunder.

37. AffirmX and Wolff, individually and in concert, failed to disclose material facts necessary to Plaintiffs in accord with their obligations and engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs. At the meeting with Friedman on August 31, 2014, Wolff fraudulently failed to disclose numerous financial issues confronting the borrower, including the risk that AffirmX might not be able to continue to pay rent for its office premises. Exhibit 6.

38. AffirmX and Wolff violated Section 10(b) of the Exchange Act and Rule 10b-5(b) in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made in light of the circumstances under which they were made, not misleading; and/or engaged in acts,

practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their purchase of AffirmX's securities.

39. AffirmX and Wolff acted with scienter, or with reckless disregard, failing to disclose the material facts necessary to Plaintiffs and comply with their obligations.

### Count 2: Violation of Section 11-301 of the Maryland Securities Act

40. Plaintiffs reallege and incorporate by referenced herein each and every allegation contained in paragraphs 1 through 39.

41. Section 11-301 of the Maryland Securities Act prohibits fraud in connection with the purchase of a security. Md. Code. Ann., Corps & Ass'ns § 11-301. AffirmX and Wolff unlawfully in connection with the offer, sale or purchase of any security, directly or indirectly, to employ a device, scheme, or artifice to defraud, omitted to state a material fact necessary to make the statements made, and engaged in an act, practice or course of business which operates as a fraud or deceit.

42. AffirmX and Wolff intentionally or with reckless disregard failed to disclose material information to Reutemann and Friedman in accordance with their obligations.

### Count 3: Breach of Fiduciary Duties

43. Plaintiffs reallege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 42.

44. AffirmX and Wolff each had a separate and independent fiduciary duty to each Plaintiff. Defendants breached those duties when they intentionally and/or recklessly failed to disclose material facts regarding the investment transaction in accordance with their obligations.

45. Reutemann and MRALP were harmed by the actions and omissions of, and breaches of duty by, AffirmX and Wolff.

### Count 4: Fraudulent Concealment

46. Plaintiffs reallege and incorporate by reference herein each and every allegation contained in paragraphs 1-45.

47. Defendants concealed or suppressed material facts from Plaintiffs which was contrary to their respective fiduciary duties to disclose material facts to Plaintiffs. AffirmX and Wolff took affirmative actions to conceal the existence of, and material facts regarding, the transaction from Plaintiffs. Plaintiffs could not have discovered the transaction and its details as Defendants knew or should have known.

### Count 5: Control Person Liability

48. Plaintiffs reallege and incorporate by referenced herein each and every allegation contained in paragraphs 1 through 47.

49. Wolff controlled issuer AffirmX at all times pertinent hereto. As such, he is liable for its wrongful conduct with respect to Reutemann and MRALP under Exchange Act Sec. 20(a).

50. The wrongful conduct of AffirmX and Wolff injured and damaged Plaintiffs Reutemann and MRALP as set-forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a) A full and complete accounting of the 2019 credit union transaction and separate valuations of AffirmX on the respective note maturity dates and immediately following the 2019 transaction;

b) The promised equity interest in AffirmX based upon the value of AffirmX on the respective maturity dates of the promissory notes;

    c) Damages in an amount to be established at trial;

    d) Attorneys' fees and costs in an amount to be established at trial;

    e) Reasonable attorneys' fees in an amount to be established after trial; and

    f) Any other necessary and appropriate relief that is just and proper.

Date: July 20, 2021

                                                    Respectfully Submitted:

                                                    Greg S. Friedman (11676)
                                                    6216 Mazwood Road
                                                    Rockville, Maryland 20852-3528
                                                    (301) 897-9130, (301) 45-4734 mobile
                                                    Facsimile (301) 686-6612
                                                    *Friedman.g@gmail.com*

                                                    Attorney for Plaintiffs

## **VERIFICATION**

     Greg S. Friedman and John F. Reutemann Jr., each hereby affirms under penalty of perjury that the contents of the foregoing Complaint and true and complete to the best of their knowledge and belief.

**MALCOLM ROAD ASSOCIATES
LIMITED PARTNERSHIP**

By Entity Management LLC, its General Partner

By: _____
    Greg S. Friedman, Managing Member

_____
JOHN F. REUTEMANN Jr.