```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

JOHN F. REUTEMANN, JR., et al.     :

                                   :

   v.                            :   Civil Action No. DKC 21-2191

                                   :

AFFIRMX LLC, et al.                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this securities fraud case are motions to dismiss and strike filed by Defendants AffirmX, LLC ("AffirmX") and Kenneth F. Wolff and a motion for leave to file a surreply *nunc pro tunc* filed by Plaintiffs John F. Reutemann, Jr. and Malcolm Road Associates Limited Partnership ("Malcolm Road"). (ECF Nos. 7; 15; 16). The issues have been fully briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part. The motion to strike will be granted and the motion for leave to file a surreply *nunc pro tunc* will be denied.

**I.   Factual Background**

The facts outlined here, which are set forth in the complaint and several accompanying attachments, are construed in the light most favorable to the Plaintiffs. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (holding that attached

documents "integral to the complaint and authentic" may be considered on a motion to dismiss).

Defendant Wolff allegedly asked Plaintiffs each to loan $100,000 to his company, Defendant AffirmX. (*See* ECF No. 1, ¶¶ 2, 15). Mr. Wolff first approached his close friend, Mr. Reutemann, telling him that AffirmX was "struggling," and that he was "in dire need" because AffirmX "would be unable to satisfy its upcoming payroll obligations" without loans. (*Id.*, ¶¶ 2-3, 16, 22). Mr. Wolff assured Mr. Reutemann that "the money would be repaid within 90 days [and that it] was essentially [] a 'bridge' loan to aid the start-up until a pending business deal closed." (*Id.*, ¶¶ 17, 19). Mr. Reutemann agreed and also facilitated Mr. Wolff's outreach to Malcolm Road, which agreed to loan the money on "essentially the same terms" as Mr. Reutemann, with the same expectation of "prompt repayment." (*Id.*, ¶¶ 3, 21, 23). In exchange, AffirmX delivered promissory notes to the Plaintiffs. (*Id.*; *see also* ECF No. 1-1, at 2 (Reutemann checks), 5 (Malcolm Road check)). The Plaintiffs allege that the notes "required repayment on [their] three-year anniversary date[s] in 2017." (*Id.*). They also allege that the notes "provided the right to convert the loan to an equity stake in the company if there was a major financing or sale of the business prior to satisfaction of the promissory note." (*Id.*).

The note allegedly executed to Mr. Reutemann states that AffirmX promises to pay "on or before July __, 2017 (the 'Maturity Date'), the principal sum of $100,000.00 together with simple interest from [July 31, 2014] on the principal amount outstanding a rate of 8% per annum." (ECF No. 1-1, at 3). The "Maturity Date" is not identified more specifically than July 2017. At that date, Mr. Reutemann "shall have the right, at [his] sole option, to convert all principal and interest due under this Note, in whole but not in part, into Membership Units in [AffirmX.]" (*Id.*).[1] "The Holder shall exercise his conversion right by giving written notice to [AffirmX] on or before the Maturity Date, however the conversion shall not be effective until the Maturity Date." (*Id.*).

The Malcolm Road note is similar. It states that AffirmX promises to pay $100,000 "on or before August 3, 2017 (the 'Maturity Date'), together with simple interest from [September 3, 2014] on the principal amount from time to time unpaid at a rate of eight percent (8%) per annum." (ECF No. 1-1, at 6). "If, at any time prior to the Maturity Date, [AffirmX] should engage in a capital financing, [Malcolm Road] shall have the right, at its sole option, to convert all principal and interest due under this Note, in whole but not in part, into Membership Units in [AffirmX.]" (*Id.*, at 7). "At such time, if [Malcolm Road] elects

---

[1] Although the attached note does not state that Mr. Reutemann is the holder, the parties agree that he is.

to convert the Note, this Note shall be canceled and [Malcolm Road] shall cease to have any rights except as otherwise provided herein or by applicable law." (*Id.*). "[T]he conversion of this Note will occur contemporaneously with the closing of such capital financing." (*Id.*).

Plaintiffs allege that AffirmX did not make the required repayments by the maturity dates and delivered only "small interest payments . . . and some principal" to Malcolm Road. (ECF No. 1, ¶¶ 4, 30). Although he ended his friendship with Mr. Reutemann as the maturity dates approached, Mr. Wolff was able to "induce Reutemann and [Malcolm Road] not to call the AffirmX loan on maturity" by pointing to certain trademarks the company held. (*Id.*, ¶ 24). Mr. Wolff also told Malcolm Road that "a capital transaction was being negotiated." (*Id.*, ¶ 29).

Full repayment, including interest accrued after the notes' maturity dates, was not made until 2019. (*See id.*, ¶¶ 4, 32-33 (stating the investments were "repaid" without any indication the payments were short)). Plaintiffs were not notified in advance; they were just "suddenly issued checks" without explanation. (*Id.*, ¶¶ 4-5, 32). Plaintiffs allege that Defendants closed a major financing transaction in which credit unions acquired AffirmX's cloud-based compliance tool. (*Id.*, ¶¶ 4-5, 31). Plaintiffs were not told about the transaction and "no conversion opportunity or equity stake was offered." (*Id.*). When they later learned of the

4

significant windfall and increase in AffirmX's value, Plaintiffs contacted counsel for Defendants. (*Id.*, ¶ 34). He told them there was "nothing to discuss." (*Id.*).

## II. Procedural Background

Plaintiffs filed this suit on August 26, 2021, asserting (1) Securities Exchange Act, (2) Maryland Securities Act, (3) breach of fiduciary duty, (4) fraudulent concealment, and (5) "control person liability" claims. (ECF No. 1, at 10-12). Plaintiffs seek (1) "[a] full and complete accounting of the 2019 credit union transaction and separate valuations of AffirmX on the respective note maturity dates and immediately following the 2019 transaction," (2) "[t]he promised equity interest in AffirmX based upon the value of AffirmX on the respective maturity dates of the promissory notes," (3) damages, and (4) attorney's fees and costs. (*Id.*, at 12-13).

Defendants moved to dismiss for failure to state a claim. (ECF No. 7). Plaintiffs opposed and Defendants replied. (ECF Nos. 11; 13). Plaintiffs then filed a surreply without the court's leave. (ECF No. 14). Defendants filed a motion to strike the surreply, which Plaintiffs opposed by moving for leave to file *nunc pro tunc*. (ECF Nos. 15; 16).

**III. Motions to Strike and for Leave to File a Surreply** *Nunc Pro Tunc*

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105(2)(a). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted). By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. 12-cv-3109-RWT, 2013 WL 3353752, at *3 (D.Md. July 2, 2013) (citation omitted). Defendants did not raise new arguments in their reply. Therefore, retroactive leave to file the surreply will not be granted, it will be struck, and the court will not consider it when resolving the pending motion to dismiss.

**IV. Motion to Dismiss**

    **A.    Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader

is entitled to relief[.]" A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

Fraud claims are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." The circumstances required to be pleaded with particularity "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (brackets in original) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).

The Private Securities Litigation Reform Act ("PSLRA") imposes additional pleading requirements on plaintiffs in

securities fraud actions.  Most notably, the PSLRA heightens the requirements for pleading scienter.  It requires a complaint, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  The Fourth Circuit has held that scienter under the PSLRA may be alleged by "pleading not only intentional misconduct, but also recklessness," *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 344 (4th Cir. 2003), and has defined recklessness as "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Id.* at 343 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999)).

    **B.**   **Analysis**

As noted above, Plaintiffs sue Defendants for federal and state securities fraud, fraudulent concealment, breach of fiduciary duty, and control person liability.  Across all five claims, Plaintiffs appear to assert two theories of recovery.  Plaintiffs first contend that Defendants either violated a duty fairly to present the notes' conversion terms or knowingly misrepresented the terms.  They second contend that Defendants improperly failed to disclose or fraudulently concealed their 2019

8

capital transaction to prevent Plaintiffs from exercising their conversion rights. Both Plaintiffs' theories of recovery hinge on whether they held a conversion right under the agreements and, if so, whether they continued to hold those rights in 2019 when Defendants executed their capital transaction and repaid Plaintiffs loans in full.

Defendants contend primarily, and nearly exclusively, that Plaintiffs' claims fail because any conversion right expired with the original maturity dates in 2017. This analysis addresses the antecedent contract interpretation question before turning to Plaintiffs' breach of fiduciary duty claim, the securities fraud and control person liability claims (which rise and fall together), and, finally, the fraudulent concealment claim.

1.  **Interpretation of Promissory Notes**

The promissory notes are governed by Maryland law, (ECF No. 1-1, at 4, 7), which requires that they be interpreted according to ordinary rules of contract construction, *Krus v. Krus*, No. 20-cv-0740-GLR, 2021 WL 2474397, at *4 (D.Md. June 16, 2021) (quoting *Jenkins v. Karlton*, 620 A.2d 894, 901 (Md. 1993)). The meaning of contract language is a question of law determined objectively. *Cochran v. Norkunas*, 398 Md. 1, 16 & n.7 (2007). If the language is unambiguous, courts must "give effect to its plain meaning[.]" *Id.*, at 16 & n.8.

The notes plainly grant Plaintiffs conversion rights in AffirmX. Mr. Reutemann's note states that, "[a]t the Maturity Date, [Mr. Reutemann] shall have the right, at [his] sole option, to convert all principal and interest due under this Note, in whole but not in part, into Membership Units in [AffirmX.]" (ECF No. 1-1, at 3). "[Mr. Ruetemann] shall exercise his conversion right by giving written notice to [AffirmX] on or before the Maturity Date[.]" (*Id.*). Malcolm Road's note states that, "[i]f, at any time prior to the Maturity Date, [AffirmX] should engage in a capital financing, [Malcolm Road] shall have the right, at its sole option, to convert all principal and interest due under this Note, in whole but not in part, into Membership Units in [AffirmX.]" (*Id.*, at 7).

Both agreements also plainly attach conditions to Plaintiffs' conversion rights. They had to be exercised by the agreements' maturity dates. For Malcom Road, the maturity date agreed to was August 3, 2017. (ECF No. 1-1, at 6). For Mr. Reutemann, the precise date is not clear but all agree it was no later than July 31, 2017. (*See id.*, at 3). The Malcolm Road note also conditions the exercise of the conversion right on AffirmX engaging in capital financing. (*Id.*, at 7). Again, the Reutemann note is less clear. While no explicit capital financing requirement is included, the method for calculating the value of any equity shares in AffirmX appears contingent on the existence of a separate financing

10

agreement.  (*See id.*, at 3 (stating that the price per membership unit of "seventy-five percent of the price paid by such other investors in such capital financing")).

Although not resolved by language of the original notes attached to the complaint, Plaintiffs have adequately alleged that they retained their conversion rights at the time of the 2019 financial transaction.  Under Maryland law, parties may modify a contract's terms impliedly through conduct.  *SumCo Eco-Contracting, LLC v. Ellicott Dredges, LLC*, No. 20-cv-2930-ELH, 2021 WL 2649799, at *10 (D.Md. June 28, 2021) (collecting cases). The totality of a party's actions is evaluated when determining whether modification of the contract occurred.  *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122 (2011).  "Assent to an offer to vary, modify or change a contract may be implied and found from circumstances and the conduct of the parties showing acquiescence or agreement."  *Cole v. Wilbanks*, 226 Md. 34, 38 (1961).[2]

---

[2] As Defendants highlight, both notes purport to limit future modifications to those in writing.  (ECF No. 1-1, at 4, 7 ("This Note may not be waived, changed, modified or discharged orally, but only by an agreement in writing signed by the party against whom the enforcement of the waiver, change, modification or discharge is sought.")).  However, such limitations are not effective under Maryland law to prevent parties from entering new agreements orally or by performance.  *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 88 (4th Cir. 2016) (applying Maryland contract law).

Plaintiffs allege enough to support an inference that the notes were impliedly modified to extend their maturity dates.[3] They plead that Defendants told them that they'd registered important patents and that a capital transaction was likely soon. (ECF No. 1, ¶¶ 24, 29). Defendants allegedly encouraged Plaintiffs not to demand repayment at the time originally agreed to as a result. (*Id.*). Moreover, Plaintiffs allege, and Defendants concede, that Defendants repaid the interest that accrued after the original maturity dates. (*See id.*, ¶¶ 4, 32-33). This strongly implies that Defendants believed that the maturity dates in the notes had been extended. Otherwise, such payments were mere gratuities.

In sum, Plaintiffs' promissory notes included conversion rights conditioned at least on being exercised by the notes' maturity dates and, according to Plaintiffs' own allegations, any capital financing by AffirmX. In addition, Plaintiffs have adequately alleged that the parties implicitly extended the maturity dates. As discussed further below, these conclusions doom Defendants primary challenge to Plaintiffs' fraud claims, which relies on the premise that the maturity dates were not modified.

---

[3] Plaintiffs also allege in the complaint that their conversion rights were automatically extended by Defendants' failure to make repayments by the loans' maturity dates but no such term is found in the notes.

12

2. **Breach of Fiduciary Duty**

One basis for Plaintiffs' theories of liability is that Defendants had entered into a fiduciary relationship with Plaintiffs through close friendship. As a result, Defendants had a fiduciary duty to represent fairly the notes' terms and a fiduciary duty to disclose any capital transactions that would have triggered Plaintiffs' conversion rights or the impending payment of all outstanding debt, which would terminate Plaintiffs' conversion rights. Absent a fiduciary relationship or a similar trigger, individuals ordinarily do not have such duties in business transactions.

A breach of fiduciary duty requires: "'(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Plank v. Cherneski*, 469 Md. 548, 599 (2020) (quoting *Froelich v. Erickson*, 96 F.Supp.2d 507, 526 (D.Md. 2000)). "A fiduciary relationship . . . involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation." *Lasater v. Guttmann*, 194 Md.App. 431, 456 (2010) (citation omitted). Examples fiduciary relationships include "those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, and guardians and wards, as well as the relationship among partners." *Plank*, 469 Md. at 598 (quotation omitted).

Plaintiffs allege that Mr. Reutemann was close friends with Mr. Wolff before the loans were made. (ECF No. 1, ¶ 16). The complaint states fairly baldly that this was a relationship of trust and confidence. (*Id.*). However, the Plaintiffs do not allege any facts that would support an inference that Mr. Reutemann relied on Mr. Wolff to manage his affairs or otherwise had reason to believe that Mr. Wolff would act for his benefit. Indeed, beyond conclusions, the Plaintiffs allege only that Mr. Reutemann and Mr. Wolff spoke almost daily and that they and their families socialized together. (*Id.*). That is not enough to plead a fiduciary relationship. Plaintiffs' breach of fiduciary duty claims will be dismissed.[4,5]

### 3. Securities Fraud and Control Person Liability

Plaintiffs assert federal and state securities fraud claims. Both Section 10(b) of the Securities Exchange Act and the Maryland Securities Act prohibit fraud "in connection with the purchase or sale of any security." *Burt v. Maasberg*, No. 12-cv-0464-ELH, 2014 WL 1291834, at *15 (D.Md. Mar. 28, 2014) (quoting 15 U.S.C.

---

[4] Because Plaintiffs have not adequately alleged the existence of a fiduciary relationship, the court need not reach Defendants alternative arguments that organizations, as opposed to individuals, cannot act as fiduciaries to individuals and that breach of fiduciary duty cannot be pleaded independently.

[5] Although Plaintiffs have not adequately alleged a fiduciary relationship, they may also contend that a confidential relationship existed. *See Lasater*, 194 Md.App. at 455-56. However, no party addresses this question.

§ 78j(b)); *Hooker v. JN Property Sols., LLC*, Nos. 783 & 1151, 2021 WL 4306899, at *10 (Md.Ct.Spec.App. Sept. 22, 2021) (referencing "the offer, sale or purchase[] of any security" (quoting Md. Code. Ann., Corps. & Ass'ns § 11-301)); *id.*, at *14 (referencing private right of action under Md. Code. Ann., Corps. & Ass'ns § 11-703). The court assumes without deciding that these claims are therefore limited to any representations or omissions that Defendants allegedly made when the notes were agreed to in 2014. Plaintiffs' control person liability claim rises and falls with these claims because it can only be asserted in conjunction with a valid securities fraud claim, *In re Criimi Mae, Inc. Sec. Litig.*, 94 F.Supp.2d 652, 662 (D.Md. 2000) (citing *In re Cryomedial Sciences, Inc. Sec. Litig.*, 884 F.Supp. 1001, 1011-12 (D.Md. 1995)), and Defendants do not assert any other basis for dismissal.

Courts typically interpret Section 10(b) and the Maryland Securities Act consistently. *See Direct Benefits, LLC v. TAC Financial, Inc.*, No. 13-cv-1185-SAG, 2020 WL 2769982, at *7 (D.Md. May 28, 2020) (describing the Acts as "mirror[ing]" one another). The elements of fraud required under both are nearly "identical" to those required under Maryland common law. *See Direct Benefits*, 2020 WL 2769982, at *7. Among other things, the securities fraud claims require allegations sufficient to support an inference that Defendants made a material misrepresentation or omission on which Plaintiffs reasonably relied. *See Burt*, 2014 WL 1291834, at *15

15

(quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009)); *see also Direct Benefits*, 2020 WL 2769982, at *7 (citing same).

Plaintiffs assert various misrepresentations and omissions. Most notably, Plaintiffs contend that Defendants fraudulently induced them to enter the loan agreements by making a promise—to allow Plaintiffs to exercise conversion rights—that they had no intention to honor. (ECF No. 11, at 6, 18-22). They assert that the note language drafted by Defendants facilitated this illusory promise by placing the event necessary to trigger the conversion rights entirely within Defendants' discretion. By this logic, the notes "were in reality NOT convertible promissory notes." (ECF No. 11, at 18). Defendants only address this possible claim in a footnote in their reply. (ECF No. 13, at 10-11). They attack it by relying on the same animating argument central to their motion to dismiss - that the notes' maturity dates were in July and August 2017 and therefore Plaintiffs' conversion rights could never have been exercised because no capital transaction occurred until 2019. As discussed above, that argument cannot defeat Plaintiffs' claims at this stage because they have adequately alleged that the notes' maturity dates were implicitly modified. Defendants offer no other basis for dismissal.

It is less clear whether Plaintiffs formally assert claims based on other misrepresentations or if they believe those

allegations merely support their inducement claim. At least one cannot be a standalone claim. Plaintiffs appear to contend that Defendants defrauded them by failing to disclose the company's dire financial condition when the parties agreed to the notes. (ECF Nos. 1, ¶ 37; 11, at 5, 17-18). But, as Defendants rightly note, there was no misleading omission because Plaintiffs allege they were told AffirmX wouldn't be able to make payroll without the loans. Defendants also appear correct that Plaintiffs would have no damages because they allege that AffirmX repaid all principal and interest due. *See Direct Benefits*, 2020 WL 2769982, at *7 (holding compensable injury required). Defendants do not, however, address another possible allegation, that Defendants misrepresented the notes by asserting that they were bridge loans that would be repaid within 90 days. (ECF No. 1, ¶ 17). Given Defendants' failure to address this allegation and the fact that the Plaintiffs' fraudulent inducement theory may proceed, the court need not resolve anything further regarding the merits of any "bridge loan" claim.

Plaintiffs' federal and state securities fraud and control person liability claims may proceed.

### 4. Fraudulent Concealment

Plaintiffs also assert that Defendants fraudulently concealed the 2019 capital transaction to prevent Plaintiffs from exercising their conversion rights. As noted above, the court assumes that

17

only Plaintiffs fraudulent concealment common law claim applies to these allegations, and not the securities fraud claims.

Fraudulent concealment claims typically require that the defendant owed a duty to disclose a material fact and failed to do so. *Blondell v. Littlepage*, 413 Md. 96, 119 (2010). Such a duty may arise from certain relationships, such as a confidential relationship. *Brass Metal*, 189 Md.App. at 354-55 (citing *Hogan v. Md. State Dental Ass'n*, 155 Md.App. 556, 566 (2004)). Even absent a duty to disclose, a defendant may be liable for fraudulent concealment if it "took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence.'" *Auto USA*, 2018 WL 1046302, at *5 (quoting *Frederick Road Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 976 n.14 (Md. 2000)); *see also Brass Metal*, 198 Md.App. at 355 n.22 (reciting the need for "more than a mere failure to reveal facts, i.e., if . . . there is a statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise he would have observed").

Defendants make only one argument against this claim—that the notes' maturity dates had expired at the time of the alleged

capital transaction.  This argument fails for the reasons discussed above.[6]

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part.  The motion to strike will be granted and the motion for leave to file a surreply *nunc pro tunc* will be denied.  A separate order will follow.

                                        /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge

---

[6] Defendants contend, without elaboration in a footnote, that Plaintiffs' fraud claims do not satisfy the Rule 9 and PSLRA pleading standards.  (ECF No. 7-2, at 12 n.2).  Such a conclusory argument cannot justify an order of dismissal.